**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **STARR SURPLUS LINES INSURANCE COMPANY,** | |
| **Plaintiff,** | **Case No.** |
| **v.** | |
| **UNITEDLEX CORPORATION, ULX MANAGER LLC, and ULX PARTNERS, LLC,** | **Jury Trial Demanded** |
| **Defendant.** | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION

COMES NOW Plaintiff Starr Surplus Lines Insurance Company ("Plaintiff" or "Starr"), by and through undersigned counsel, and states as follows for its Complaint for Declaratory Judgment:

## INTRODUCTION

1.    This action seeks a declaratory judgment that no coverage is afforded under the excess professional liability insurance policy issued by Starr to UnitedLex Corporation ("UnitedLex") for the settlement of claims asserted against UnitedLex and other insureds ("Settlement") in the matter styled *Lynn L. Tavenner, as Chapter 7 Trustee v. ULX Partners, LLC, et al.*, Adv. Proc. No. 20-03142 (KRH) (the "ULX Action").

2.    As described in further detail below, UnitedLex, historically a "global enterprise legal services provider," formed a joint venture with the law firm LeClairRyan LLP ("LeClairRyan"), in an effort to move beyond merely being a vendor providing legal services and become more of a partner to a "constellation" of law firms, and as a way to purportedly

address LeClairRyan's financial difficulties. However, approximately 15 months after the transaction closed, LeClairRyan declared bankruptcy.

3.　　The trustee of the bankruptcy estate of LeClairRyan filed an adversary proceeding against UnitedLex and its affiliates (the "ULX Entities," defined and discussed further below), alleging the ULX Entities conspired (along with a private equity investment firm, LeClairRyan's former CEO Gary LeClair, and others) to mismanage the joint venture and strip LeClairRyan of its assets, trade secrets, and intellectual property, all to benefit the interests of UnitedLex and its other business partners while LeClairRyan continued spiraling into insolvency.

4.　　The ULX Entities settled the ULX Action and have sought an indemnity contribution from Starr. Starr is filing the present action in order to obtain a declaratory judgment that there is no coverage available under Starr's policy for the Settlement because the ULX Action did not involve any alleged **Wrongful Acts** as defined in the applicable insuring agreement and did not seek any covered **Damages**.

5.　　Even if UnitedLex could meet its burden of proving the Settlement involved covered amounts, which it cannot, coverage is also unavailable due to UnitedLex's misrepresentations and omissions when applying for coverage, under the Starr Policy's Pending or Prior Litigation Exclusion (defined and discussed below), and under the Deliberate Acts Exclusion (also defined and discussed below).

6.　　Finally, given UnitedLex's misrepresentations and omissions when applying for the policy, Starr also seeks a declaratory judgment that it is entitled to rescind the Starr Policy and render it void *ab initio*.

## THE PARTIES

7.      Plaintiff Starr is a Texas corporation with its principal place of business in New York. Starr issued an insurance policy to UnitedLex in Overland Park, Kansas, as described more fully in the factual allegations below.

8.      Defendant UnitedLex is the policyholder of the insurance policy issued by Starr, as described more fully in the factual allegations below. Upon information and belief, UnitedLex is a Delaware corporation with its principal place of business in Overland Park, Kansas.

9.      Defendant ULX Manager LLC ("ULXM") is, upon information and belief, a Delaware corporation that is wholly owned and controlled by UnitedLex.

10.     Defendant ULX Partners, LLC ("ULXP") (together with UnitedLex and ULXM, the "ULX Entities" or "Defendants") is, upon information and belief, a Delaware limited liability company that is fully controlled and managed by ULXM.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1332 and 2201. This action involves a declaratory judgment between citizens of different states. The amount in controversy also exceeds $75,000, whether viewed from the perspective of Plaintiff or Defendants.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the insurance policy that is the subject of this action was issued by Starr to UnitedLex in Overland Park, Kansas.

## FACTUAL BACKGROUND

**A.     The Underlying Actions**

13.     On September 3, 2019, LeClairRyan filed a Petition for Bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Virginia, in an action styled *In re: LeClairRyan PLLC*, Case No. 19-34574-KRH ("Bankruptcy Action").

14.     On October 26, 2020, Lynn L. Tavenner, as Chapter 7 Trustee ("Trustee") of the Estate of LeClairRyan ("Estate") filed an adversary proceeding against UnitedLex and ULXP in the Bankruptcy Action, Adv. Proc. No. 20-03142-KRH ("ULX Action"). On August 25, 2021, the Trustee filed a First Amended Complaint ("Amended Complaint") against the ULX Entities and Mr. LeClair, which remains the operative pleading in the ULX Action. A true and accurate copy of the Amended Complaint in the ULX Action is attached hereto as **Exhibit A**.

15.     On September 2, 2021, the Trustee filed an adversary proceeding in the Bankruptcy Action against CVC Capital Partners – a private equity investment company that owns a majority interest in UnitedLex ("CVC"), and certain individual defendants (collectively, the "CVC Defendants"), Adv. Proc. No. 21-03095-KRH ("CVC Action") (together with the ULX Action, the "Adversary Proceedings") (Adversary Proceedings and Bankruptcy Action collectively referred to herein as the "Underlying Actions"). A true and accurate copy of the Complaint in the CVC Action (which was filed in redacted form on the CVC Action docket) is attached hereto as **Exhibit B**.

16.     In the Amended Complaint, the Trustee describes the ULX Action as "the aftermath of one deceitful law firm 'entrepreneur' conspiring with an opportunistic 'global

enterprise legal services provider,' an actively complicit investment bank, and a group of scheming lawyers to manipulate a law firm for their own gain and benefit." Ex. A, ¶ 1.

17.     In brief, the Trustee alleges UnitedLex was generally in the business of providing non-legal services for law firms and legal departments, which included "back-office" services like accounting, marketing, technology, and human resources support, as well as legal support services like patent mining, document management, and electronic discovery. *Id.*, ¶ 45.

18.     In 2017, "searching for a lifeline," LeClairRyan turned to a potential joint venture with UnitedLex, which itself sought to "move beyond merely being a vendor providing legal services to become more of a partner to a 'constellation' of law firms," as a way to address LeClairRyan's financial difficulties. *Id.*, ¶¶ 98-99.

19.     In June 2018, UnitedLex and LeClairRyan (through its then-CEO, Mr. LeClair) announced the creation of a joint venture – ULXP – which was to be a "strategic 'business platform' designed to provide a 'constellation' of law firms with streamlined operations" (the "Transaction"). The Transaction rebadged more than 300 LeClairRyan employees as ULXP employees, and promised to provide LeClairRyan with a "pathway to funding" from private equity investor CVC. In exchange, LeClairRyan gave ULXP a license to its intellectual property and a "turn-key" back-office operation that the ULX Entities could then sell to other law firms. In the end, the Transaction did not provide LeClairRyan with the promised funding; instead, it resulted in the ULX Entities extracting value from LeClairRyan while LeClairRyan's debts increased. Ultimately, the law firm had no choice but to liquidate. *Id.*, ¶¶ 2-3.

20.     The Trustee alleges the Transaction was a scheme by Mr. LeClair and UnitedLex to secure short-term funding for the financially troubled law firm, through which Mr. LeClair and UnitedLex then profited to the detriment of LeClairRyan and its other creditors. *Id.*, ¶ 14.

21.     Among other things, the Trustee alleges the ULX Entities mismanaged the joint venture and contributed to LeClairRyan's worsening financial condition by prioritizing payments to ULXP over other creditors; using the joint venture (including by misappropriating intellectual property and trade secrets) to promote and build their other businesses while at the same time depriving LeClairRyan of its assets; and stringing LeClairRyan along with promised business deals upon which they never delivered. *Id.*, ¶¶ 173-185.

22.     The Amended Complaint in the ULX Action includes 34 Counts, including avoidance of fraudulent transfers and preferences under several provisions of the U.S. Bankruptcy Code; misappropriation of trade secrets; breach of fiduciary duty; accounting; statutory conspiracy; common law conspiracy; equitable subordination under the U.S. Bankruptcy Code; conversion; unjust enrichment and disgorgement of expense transfers; and alter ego liability.

23.     In the CVC Action, the Trustee alleges the CVC Defendants engaged in a "multi-layered scheme designed to conceal LeClairRyan's true financial state while [the CVC Defendants], along with [the ULX Entities], and certain LeClairRyan insiders, profited." Ex. B, ¶ 1.

24.     The Complaint in the CVC Action includes Counts for unjust enrichment; misappropriation of trade secrets; statutory conspiracy; common law conspiracy; breach of fiduciary duty; and constructive fraud.

**B.     The Settlement**

25.     On June 28, 2022, the Court in the Bankruptcy Action issued a Memorandum Opinion and Order ("Opinion"), lodged on the docket in redacted form, granting the Trustee's motion for an order approving a judicially mediated global settlement of the Adversary Proceedings (the "Settlement"). *See* Bankruptcy Action, Dkt. Nos. 1452-53.

26.     Although the Settlement was filed under seal, the publicly filed Opinion notes the parties to the Settlement include the Trustee, ULX Entities, CVC Defendants, and certain insurance companies. *See id.* at 1, n.2.

27.     The Opinion further explains that the parties to the Adversary Proceedings announced on April 19, 2022 that they had reached a settlement in principle, and that the Settlement provides for payments to the Estate totaling $21 million, as a result of which, among other things, ULXP will waive any right to payment of proofs of claims it filed in the Bankruptcy Action, the parties will exchange mutual releases, and both Adversary Proceedings will be dismissed with prejudice. *See id.* at 19.

28.     The ULX Entities sought contribution from Starr for a portion of the Settlement, and Starr disclaimed any duty to indemnify the ULX Entities for the Settlement.

**C.     The Policies**

The Primary Policy

29.     Columbia Casualty Company ("Columbia") issued EPS+ Policy No. 596618014 to UnitedLex for the November 1, 2019 to November 1, 2020 **Policy Period**, with a $10 million

aggregate limit of liability, subject to a $100,000 retention per **Claim** (the "Primary Policy").[1] A true and accurate copy of the Primary Policy is attached hereto as **Exhibit C**.

The Starr Policy

30.     Starr issued Excess Policy No. 1000634179191 to UnitedLex for the November 1, 2019 to November 1, 2020 policy period ("Starr Policy"). A true and accurate copy of the Starr Policy is attached hereto as **Exhibit D**.

31.     Subject to its terms, conditions, and exclusions, the Starr Policy provides a $10 million each and every claim Limit of Liability, subject to a $10 million aggregate Limit of Liability. The Starr Policy is excess of the Primary Policy, and incorporates all terms of the Primary Policy (except as respects the premium and amount of the sum insured) and follows the wording of the Primary Policy, subject to any specific amendments in the Starr Policy.

Relevant Policy Provisions

32.     The applicable Insuring Agreement of the Primary Policy to which the Starr Policy follows form states, in relevant part, that "the Insurer will pay on behalf of the **Insured** all sums, in excess of the retention and up to the applicable limit of liability, that the **Insured** shall become legally obligated to pay:

> **1.   Technology and Professional Liability**
>
> as **Damages** and **Claims Expenses** resulting from any **Claim** first made against the **Insured** during the **Policy Period** . . . alleging **Wrongful Acts** by the **Insured**, or by someone for whose **Wrongful Acts** the **Insured** is legally liable[.]

Ex. C, Primary Policy, Section I.A.1.

---

[1] Except for headings and where otherwise noted, terms in bold are defined terms in the Primary Policy.

33.    "**Wrongful Act**" is defined in relevant part as follows:

    A.  with respect to **Insuring Agreement A.1. Technology and Professional Liability only**, a **Wrongful Act** means any actual or alleged act, error, omission … or **Breach of Contract**:

    1.  committed solely in the conduct of **Professional Services** or **Technology Services** for others[.]

*Id.*, Section II., Definitions, as amended by Cyber Coverage Enhancement Endorsement ("Endorsement No. 21").

34.    "**Professional Services**" means those services performed for others that are specified in the "Professional Services Endorsement." *Id.*, Section II., Definitions. The Professional Services Endorsement, in turn, defines "**Professional Services**" to mean "advisory services, digital contracting, litigation services, including legal business solutions, information governance and compliance, cyber risk solutions, discovery process engineering, contracts management, contracts review services, contracts operations, eDiscovery, & attorney document review."

35.    "**Technology Services**" means, in pertinent part, "information technology services including, but not limited to: 1. designing, developing, programming, writing, testing, installing, servicing, supporting, maintaining, repairing and updating software including any modification and reengineering and providing training, updates and support; 2. planning, designing, developing, engineering, installation and maintaining computer systems, computer networks and electronic systems; 3. managing and operating computer systems, computer networks and facilities, as well as facilities support services; 4. designing and publishing prepackaged and custom designed application and systems software; 5. data processing,

management, warehousing and data hosting including data entry, conversion, destruction and

analysis[.]" *Id.*, Section II., Definitions.

36.     "**Damages**" means, in relevant part:

> A. settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment), or other amounts for which the **Insured** is legally obligated to pay on account of a covered **Claim**;

> B. punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this Policy's other terms, conditions and limitations). Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiplied amounts; . . .

However, **Damages** do not include:

> … 2. fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, financial loss, mitigation expenses, set-off amounts or payments in the form of service credits or coupons or other non-cash consideration; …

> 8.   any amounts assessed as royalty fees or payments; …

> 10.  plaintiff's attorney fees or expenses associated with items **1.** through **9.** above.

*Id.*, Section II, Definitions, as amended by Endorsement No. 21.

37.     Section VI.F. of the Primary Policy, **Application**, as amended by Endorsement

No. 21, states:

> The **Insureds** represent and acknowledge that the statements contained in the **Application** and any materials submitted or required to be submitted therewith (which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are true and accurate and:

> > 1. are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and,

2.  shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy.

In the event the statements, representations or information in the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, this Policy shall be void from inception as to the **Insured** who knew as of the effective date of this Policy the facts that were misrepresented or omitted, whether or not such person knew of such untruthful disclosure in the **Application**. For purposes of this paragraph, the knowledge of any natural person **Insured** shall not be imputed to any other natural person **Insured** and only the knowledge of an **Executive Officer** shall be imputed to the **Insured Entity**.

38.  "**Application**" means "all signed applications, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy by the Insurer, or any other policy underwritten by the Insurer or its affiliates of which this Policy is a direct or indirect renewal or replacement." *Id.*, Section II., Definitions.

39.  The application for the Primary Policy ("Application," a true and accurate copy of which is attached hereto as **Exhibit E**), states, in relevant part:

It is agreed by all concerned that if any of the proposed Insured Persons or Employees is responsible for or has knowledge of any Wrongful Act, fact, circumstance or situation which s(he) has reason to suppose might result in a future Claim, whether or not described above, any Claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance as to (i) such of the Insured Persons or Employees and (ii) the Company and Subsidiaries if such proposed Insured Persons are Executive Officers.

Application, **SIGNATURE AND REPRESENTATION**.

40.  The Application's **SIGNATURE AND REPRESENTATION** section further provides: "The undersigned agrees that if after the date of this Application and prior to the effective date of any Policy based on this Application, any occurrence, event or other

- 11 -

circumstance should render any of the information in this Application inaccurate or incomplete, then the undersigned shall notify the Insurer of such occurrence, event or circumstance and shall provide the Insurer with information that would complete, update or correct such information. Any outstanding quotations may be modified or withdrawn at the sole discretion of the Insurer."

41.     The Primary Policy states, in relevant part:

This Policy does not apply to any **Claim**: …

**D. Deliberate Acts/Commingling or Misappropriation of Funds**

based upon or arising out of any dishonest, fraudulent, criminal or malicious act or omission, commingling, misappropriation or misuse of funds, intentional wrongdoing or knowing violation of any contract or agreement by or on behalf of an **Insured**. The Insurer shall pay **Claim Expenses** of such **Claims** unless or until a final adjudication in any proceeding establishes that such act, omission, commingling, misappropriation, misuse or violation was committed. . . .

For purposes of determining the applicability of this exclusion:

1. the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and,

2. only facts pertaining to and knowledge possessed by any **Executive Officer** shall be imputed to the **Insured Entities**[.]

Primary Policy, Section III.D, as amended by Amend Deliberate Acts Exclusion Endorsement (hereinafter, the "Deliberate Acts Exclusion").

42.     The Starr Policy states:

It is understood and agreed that this Policy shall not cover any loss in connection with any Claim alleging, arising out of, based upon or attributable to, as of the ***November 1, 2019*** any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation which an Insured had notice, including any Claim or loss alleging or

derived from the same or essentially the same facts, or the same or related act(s), error(s), omission(s) or Wrongful Act(s), as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

Ex. D, Pending or Prior Litigation Exclusion Endorsement (emphasis original) (hereinafter the "Pending or Prior Litigation Exclusion").

<u>**COUNT I**</u>
<u>**(Declaratory Judgment – No Duty to Indemnify – No "Wrongful Act")**</u>

43.     Starr incorporates herein by reference Paragraphs 1-42 as though fully set forth herein.

44.     Subject to its terms and conditions, the Primary Policy to which the Starr Policy follows form provides coverage for "any **Claim** first made against the **Insured** during the **Policy Period** . . . alleging **Wrongful Acts** by the **Insured**, or by someone for whose **Wrongful Acts** the **Insured** is legally liable," and defines "**Wrongful Act**" to mean, in pertinent part, "any actual or alleged act, error, omission … or **Breach of Contract**: committed solely in the conduct of **Professional Services** or **Technology Services** for others[.]"

45.     The Primary Policy to which the Starr Policy follows form defines "**Professional Services**" to mean "advisory services, digital contracting, litigation services, including legal business solutions, information governance and compliance, cyber risk solutions, discovery process engineering, contracts management, contracts review services, contracts operations, eDiscovery, & attorney document review."

46.     The Primary Policy to which the Starr Policy follows form defines "**Technology Services**" in pertinent part to mean "information technology services including, but not limited to: 1. designing, developing, programming, writing, testing, installing, servicing, supporting,

maintaining, repairing and updating software including any modification and reengineering and providing training, updates and support; 2. planning, designing, developing, engineering, installation and maintaining computer systems, computer networks and electronic systems; 3. managing and operating computer systems, computer networks and facilities, as well as facilities support services; 4. designing and publishing prepackaged and custom designed application and systems software; 5. data processing, management, warehousing and data hosting including data entry, conversion, destruction and analysis[.]"

47.     In the ULX Action, the Trustee alleges that, over the course of creating and then operating the joint venture with LeClairRyan, the ULX Entities mismanaged the joint venture and contributed to LeClairRyan's worsening financial condition by, among other things, prioritizing payments to ULXP over other creditors; using the joint venture (including by misappropriating intellectual property and trade secrets) to promote and build their other businesses while at the same time depriving LeClairRyan of its assets; and stringing LeClairRyan along with promised business deals upon which they never delivered.

48.     The ULX Action does not allege any **Wrongful Acts** by an **Insured**, or by someone for whose **Wrongful Acts** the **Insured** is legally liable, as the term "**Wrongful Acts**" is defined in the Primary Policy to which the Starr Policy follows form.

49.     Starr has no duty to indemnify the ULX Entities for the Settlement under the Starr Policy because the ULX Action does not allege any act, error, omission, or **Breach of Contract** committed solely in the conduct of **Professional Services** or **Technology Services** for others, as required to trigger the applicable Insuring Agreement of the Primary Policy to which the Starr Policy follows form.

50.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

51.     By virtue of the foregoing, Starr is entitled to a judgment declaring that no coverage is available under the Starr Policy for the Settlement.

## COUNT II
## (Declaratory Judgment – No Duty to Indemnify – No "Damages")

52.     Starr incorporates herein by reference Paragraphs 1-51 as though fully set forth herein.

53.     Subject to its terms and conditions, the Primary Policy to which the Starr Policy follows form only provides indemnity coverage for "**Damages**."

54.     "**Damages**" means, in relevant part:

> A. settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment), or other amounts for which the **Insured** is legally obligated to pay on account of a covered **Claim**;

> B. punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this Policy's other terms, conditions and limitations). Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiplied amounts; . . .

However, **Damages** do not include:

> … 2. fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, financial loss, mitigation expenses, set-off amounts or payments in the form of service credits or coupons or other non-cash consideration; …

> 8.   any amounts assessed as royalty fees or payments; …

> 10.   plaintiff's attorney fees or expenses associated with items **1.** through **9.** above.

55.     The relief sought by the Trustee in the ULX Action does not constitute **Damages**, as that term is defined in the Primary Policy to which the Starr Policy follows form, and is otherwise uninsurable as a matter of law and/or public policy.

56.     Starr has no duty to indemnify the ULX Entities for the Settlement under the Starr Policy because the ULX Entities have not proven that any portion of the Settlement paid or agreed to be paid by the ULX Entities constitutes **Damages** as that term is defined in the Primary Policy to which the Starr Policy follows form, or are otherwise insurable as a matter of law and/or public policy.

57.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

58.     By virtue of the foregoing, Starr is entitled to a judgment declaring that no coverage is available under the Starr Policy for the Settlement.

<u>**COUNT III**</u>
<u>**(Declaratory Judgment – No Duty to Indemnify – No Claim Against Insured)**</u>

59.     Starr incorporates herein by reference Paragraphs 1-58 as though fully set forth herein.

60.     Subject to its terms and conditions, the Primary Policy to which the Starr Policy follows form only provides coverage for **Claims** made against an **Insured** alleging **Wrongful Acts** by the **Insured** or by someone for whose **Wrongful Acts** the **Insured** is legally liable.

61.     The Settlement provides that, among other things, ULXP will waive any right to payment of proofs of claims it filed in the Bankruptcy Action.

62.     Starr has no duty to indemnify the ULX Entities for any portion of the Settlement representing ULXP's waiver of any right to payment of proofs of claims it filed in the

Bankruptcy Action because any such amounts do not result from any **Claim** made against an **Insured** alleging **Wrongful Acts** by the **Insured** or someone for whose **Wrongful Acts** the **Insured** is legally liable.

63.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

64.     By virtue of the foregoing, Starr is entitled to a judgment declaring that no coverage is available under the Starr Policy for the Settlement.

<u>**COUNT IV**</u>
<u>**(Declaratory Judgment – No Duty to Indemnify – Claim Emanating from Known Facts or Circumstances)**</u>

65.     Starr incorporates herein by reference Paragraphs 1-64 as though fully set forth herein.

66.     Subject to its terms and conditions, the Primary Policy to which the Starr Policy follows form provides that the **Application** and any materials submitted or required to be submitted therewith are deemed attached to and incorporated into the policy as if physically attached.

67.     The Application states, in relevant part: "It is agreed by all concerned that if any of the proposed Insured Persons or Employees is responsible for or has knowledge of any Wrongful Act, fact, circumstance or situation which s(he) has reason to suppose might result in a future Claim, whether or not described above, any Claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance as to (i) such of the Insured Persons or Employees and (ii) the Company and Subsidiaries if such proposed Insured Persons are Executive Officers."

68.     Starr has no duty to indemnify the ULX Entities for the Settlement under the Starr Policy because the ULX Action emanates from facts, circumstances, or situations which UnitedLex was responsible for or had knowledge of, and had reason to suppose might result in a future Claim, when applying for the Starr Policy.

69.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

70.     By virtue of the foregoing, Starr is entitled to a judgment declaring that no coverage is available under the Starr Policy for the Settlement.

<u>**COUNT V**</u>
<u>**(Declaratory Judgment – No Duty to Indemnify – Pending or Prior Litigation Exclusion)**</u>

71.     Starr incorporates herein by reference Paragraphs 1-70 as though fully set forth herein.

72.     The Starr Policy contains a Pending or Prior Litigation Exclusion Endorsement, which states: "It is understood and agreed that this Policy shall not cover any loss in connection with any Claim alleging, arising out of, based upon or attributable to, as of the ***November 1, 2019*** any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation which an Insured had notice, including any Claim or loss alleging or derived from the same or essentially the same facts, or the same or related act(s), error(s), omission(s) or Wrongful Act(s), as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation." (emphasis original).

73.     The ULX Action is a Claim alleging, arising out of, based upon or attributable to the Bankruptcy Action, which is "litigation" or "an administrative or regulatory proceeding or investigation" pending as of November 1, 2019, and for which the ULX Entities had notice.

74.     Starr has no duty to indemnify the ULX Entities for the Settlement under the Starr Policy pursuant to the Prior or Pending Litigation Exclusion.

75.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

76.     By virtue of the foregoing, Starr is entitled to a judgment declaring that no coverage is available under the Starr Policy for the Settlement.

### COUNT VI
### (Declaratory Judgment – No Duty to Indemnify – Deliberate Acts Exclusion)

77.     Starr incorporates herein by reference Paragraphs 1-76 as though fully set forth herein.

78.     The Primary Policy to which the Starr Policy follows form provides, in relevant part: "This Policy does not apply to any **Claim** … based upon or arising out of any dishonest, fraudulent, criminal or malicious act or omission, commingling, misappropriation or misuse of funds, intentional wrongdoing or knowing violation of any contract or agreement by or on behalf of an **Insured**. The Insurer shall pay **Claim Expenses** of such **Claims** unless or until a final adjudication in any proceeding establishes that such act, omission, commingling, misappropriation, misuse or violation was committed. . . . For purposes of determining the applicability of this exclusion: 1. the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and, 2. only facts

pertaining to and knowledge possessed by any **Executive Officer** shall be imputed to the **Insured Entities**[.]"

79.     Starr will be able to establish in the present action that the ULX Action is a **Claim** based upon or arising out of dishonest, fraudulent, criminal or malicious acts or omissions, commingling, misappropriation or misuse of funds, intentional wrongdoing or knowing violation of any contract or agreement by or on behalf of an **Insured**, committed by one or all of the ULX Entities.

80.     Starr will be able to establish in the present action that it has no duty to indemnify the ULX Entities for the Settlement under the Starr Policy pursuant to the Deliberate Acts Exclusion.

81.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

82.     By virtue of the foregoing, Starr is entitled to a judgment declaring that no coverage is available under the Starr Policy for the Settlement.

## COUNT VII
## (Declaratory Judgment – Rescission)

83.     Starr incorporates herein by reference Paragraphs 1-82 as though fully set forth herein.

84.     The Primary Policy to which the Starr Policy follows form states:

> The **Insureds** represent and acknowledge that the statements contained in the **Application** and any materials submitted or required to be submitted therewith (which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are true and accurate and:

1. are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and,

2. shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy.

In the event the statements, representations or information in the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, this Policy shall be void from inception as to the **Insured** who knew as of the effective date of this Policy the facts that were misrepresented or omitted, whether or not such person knew of such untruthful disclosure in the **Application**. For purposes of this paragraph, the knowledge of any natural person **Insured** shall not be imputed to any other natural person **Insured** and only the knowledge of an **Executive Officer** shall be imputed to the **Insured Entity**.

85.     Starr has determined that the materials UnitedLex submitted when applying for the Policies, which are deemed material to the acceptance of the risk or hazard assumed by Starr, contained misrepresentations and omissions which materially affected either the acceptance of the risk or hazard assumed by Starr under the Starr Policy such that the Starr Policy is void from inception as to the ULX Entities.

86.     In the alternative, Starr has grounds to rescind the Starr Policy pursuant to KAN. STAT. ANN. § 40-2, 120(b).

87.     An actual and justiciable controversy exists between Starr and the ULX Entities regarding Starr's obligations under the Starr Policy with respect to the Settlement.

88.     By virtue of the foregoing, Starr is entitled to a judgment declaring that Starr has grounds to rescind the Starr Policy such that no coverage is available under the Starr Policy for the Settlement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Starr Surplus Lines Insurance Company respectfully requests that this Court enter an order granting the following relief and for judgment against Defendants as follows:

1. On Count I, a judgment declaring that no indemnity coverage is available under the Starr Policy for the Settlement because the ULX Action does not allege any act, error, omission, or **Breach of Contract** committed by Defendants solely in the conduct of **Professional Services** or **Technology Services** for others;

2. On Count II, a judgment declaring that no indemnity coverage is available under the Starr Policy for the Settlement because Defendants have not proven that any portion of the Settlement paid or agreed to be paid by Defendants constitutes **Damages** as that term is defined in the Primary Policy to which the Starr Policy follows form, or are otherwise insurable as a matter of law and/or public policy;

3. On Count III, a judgment declaring that no indemnity coverage is available under the Starr Policy for the Settlement to the extent the Settlement involves amounts that do not result from any **Claim** made against an **Insured** alleging **Wrongful Acts** by the **Insured** or someone for whose **Wrongful Acts** the **Insured** is legally liable;

4. On Count IV, a judgment declaring that no indemnity coverage is available under the Starr Policy for the Settlement because the ULX Action emanates from facts, circumstances, or situations which UnitedLex was responsible for or had knowledge of, and had reason to suppose might result in a future Claim, when applying for the Starr Policy;

5. On Count V, a judgment declaring that no indemnity coverage is available under the Starr Policy for the Settlement pursuant to the Prior or Pending Litigation Exclusion;

6. On Count VI, a judgment declaring that no indemnity coverage is available under the Starr Policy for the Settlement pursuant to the Deliberate Acts Exclusion;

7. On Count VII, a judgment declaring that Starr is entitled to rescind the Starr Policy; and

8. On all Counts, Starr's costs of suit herein and such other relief as this Court deems just and proper.

Plaintiff also demands a trial by a jury.

Respectfully submitted, this 11th day of August, 2022.

> STARR SURPLUS LINES INSURANCE COMPANY
>
> By: /s/ Jennifer Artman
>
> SHOOK HARDY & BACON
> Jennifer Artman (D. Kan. Bar No. 78451)
> 2555 Grand Blvd.
> Kansas City, MO 64108
> Telephone: (816) 559-0335
> jartman@shb.com
>
> TROUTMAN PEPPER HAMILTON SANDERS LLP
> Kevin F. Kieffer (*pro hac vice* application forthcoming)
> 5 Park Plaza, Suite 1400
> Irvine, CA 92614
> Telephone: (949) 622-2708
> E-mail: kevin.kieffer@troutman.com
>
> TROUTMAN PEPPER HAMILTON SANDERS LLP
> Thomas S. Hay (*pro hac vice* application forthcoming)
> 501 Grant Street, Suite 300

Pittsburgh, PA 15219
Telephone: (412) 454-5812
E-mail: thomas.hay@troutman.com

*Counsel for Plaintiff Starr Surplus Lines Insurance Company*